1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  United States of            ) No. CR-05-920-RSWL
    America,                     )
12                              )
                                )
13                              ) ORDER **GRANTING IN PART AND**
                                ) **DENYING IN PART**
14              Plaintiff,       ) DEFENDANTS' MOTIONS
                                )
15          v.                   )
                                )
16  Michael Dennis Williams,    )
    et al.,                     )
17                              )
            Defendants.          )
18                              )
                                )
19                              )
                                )
20                              )
    _____ )
21

22      On October 8, 2008, various Motions filed by

23  Defendant Michael Dennis Williams and Defendant Antoine

24  Lamont Johnson came on for regular calendar before this

25  Court.  Plaintiff, United States of America, appeared

26  through its counsel of record, Assistant United States

27  Attorneys Elizabeth Yang and Karen Meyer.  Defendant

28  Johnson appeared with his counsel of record, Amy Jacks

1

and Richard Lasting.   Defendant Williams appeared with his counsel of record, Marcia Morrissey and Lynne Coffin.   The matters were submitted, and the Court having considered all papers and arguments, **NOW FINDS AND RULES AS FOLLOWS**:

1.   <u>Defendant Williams' Motion to Strike Notice of Intent to Seek the Death Penalty Due to Constitutionally Insufficient Notice [513]</u>

     Defendant's motion is **DENIED IN PART AND GRANTED IN PART**.   Neither the statutory requirements of 18 U.S.C. § 3593 nor the United States Constitution require the Government to provide in its Notice of Intent to Seek the Death Penalty ("Notice") specific evidence or facts that it seeks to use in order to prove the *mens rea* factors and statutory and non-statutory aggravating factors.   <u>See</u> <u>United States v. Battle</u>, 173 F.3d 1343, 1347 (11th Cir. 1999) (government not required to provide specific evidence in its Notice); <u>Llera Plaza</u>, 179 F. Supp. 2d at 472 (§ 3593 does not require government to provide specific evidence in its Notice); <u>United States v. Lecroy</u>, 441 F.3d 914, 929 (11th Cir. 2006); <u>United States v. Higgs</u>, 353 F.3d 281, 325 (4th Cir. 2003).   The Government's Notice fulfills the statutory requirements of § 3593 because it states that the Government intends to seek the death penalty and sets forth the § 3591(a) intent factors, the § 3592(c) statutory aggravating factors, and the § 3593

non-statutory aggravating factors.

However, the Sixth Amendment still requires that a defendant receive sufficient notice to enable him to prepare a defense.  Upon reviewing the Notice and the First Superseding Indictment ("FSI"), the Court finds that Defendant has received constitutionally sufficient notice of the factual basis for all the *mens rea* factors and the statutory and non-statutory aggravating factors, except as specifically set forth below.

A.   There is Sufficient Notice for the Alleged *Mens Rea* Factors

Although not required, the FSI properly alleges the factual basis for the *mens rea* factors.  The Notice states the three *mens rea* factors and alleges that each *mens rea* factor resulted in the death of Evelio Suarez, Jr.  More importantly, the FSI alleges, among other things, that:

-   Defendant met with others to plan the robbery of the Armored Transport Systems ("ATS") truck.

-   Defendant and others approached the truck and ATS guards with multiple firearms, including two assault rifles and a handgun.

-   Defendant and others fired fifty-two rounds at the guards, and shot and killed Evelio Suarez.

-   Defendant and others stole $436,000 and fled to a waiting van.

This is sufficient to give Defendant notice of what the Government intends to prove with respect to the

3

1  *mens rea* factors.

2

3      Moreover, it is not improper for the Government to

4  allege more than one *mens rea* factor.  Multiple *mens rea*

5  factors will not skew the sentencing process in favor of

6  death because the *mens rea* factors are not aggravating

7  factors, but merely gateway intent factors which play no

8  role in the weighing process during the penalty phase.

9  United States v. Jackson, 327 F.3d 273, 300-01 (4th Cir.

10  2003).

11

        B.   There is Sufficient Notice for Each Statutory
12      Aggravating Factor, Except the Prior Firearm
        Related Conviction
13

14      For the same reasons given for the *mens rea*

15  factors, the FSI gives proper notice of each statutory

16  aggravating factor, except the prior firearm-related

17  conviction statutory aggravating factor under 18 U.S.C.

18  § 3592(c)(2).  The Government shall provide Defendant

19  with specific information regarding the conviction that

20  it intends to use.

21

22      C.   The Non-Statutory Aggravating Factors

23

24      The Court finds that Defendant has sufficient

25  notice of the non-statutory aggravating factors, except

26  as specified below, based on the Government's contention

27  that the information has been provided during discovery.

28  The factual basis for the non-statutory aggravating

4

factors need not be stated in the Notice or FSI.

The Court finds that there is insufficient notice for the two non-statutory aggravating factors of future dangerousness and victim impact evidence.  However, the Court has considered the Government's contention that it has agreed to disclose, on a previously agreed timetable for disclosure, evidence the Government intends to introduce relating to these non-statutory aggravating factors.  The Court orders the Government to specify, when it becomes available and within reasonable time of trial, the other acts, not described in the FSI or Notice, that support the allegation of future dangerousness, and provide an outline describing the injury, harm, and loss suffered by Evelio Suarez' family and friends.

2.  <u>Defendant Johnson's Motion for Joinder as to Defendant Williams' Motion to Dismiss the Special Findings and Strike Notice of Intent to Seek the Death Penalty due to Constitutionally Insufficient Notice; to Dismiss Special Findings and Strike Notice of Intent to Seek the Death Penalty; and to Preclude a Capital Prosecution [521]</u>

Good cause having been shown, Defendant Johnson's Motion for joinder is **GRANTED.**

3.  <u>Defendant Williams' Motion to Strike Notice of Intent to Seek the Death Penalty and to Dismiss "Special Findings" [514]</u>

Defendant's Williams' Motion is **DENIED IN PART AND GRANTED IN PART.**

///

5

A. The Statutory Aggravating Factors Should Not be Dismissed

    i.  The Substantial Planning and Premeditation Statutory Aggravating Factor Should Not be Dismissed

    Defendant's request to strike the statutory aggravating factor of substantial planning and premeditation is **DENIED**.  The statutory aggravating factor of substantial planning and premeditation properly narrows the class of murders subject to the death penalty.  Not every murder involves "substantial planning and premeditation."  <u>United States v. Bourgeois</u>, 423 F.3d 501, 511 (5th Cir. 2005).

    Furthermore, "substantial planning and premeditation" is not unconstitutionally vague.  An aggravating factor is not unconstitutional if it has some "common-sense core of meaning...that criminal juries should be capable of understanding." <u>Tuilaepa v. California</u>, 512 U.S. 967, 973 (1994) (quoting <u>Jurek v. Texas</u>, 428 U.S. 262, 279 (1976)(White, J., concurring in judgment)).  "Substantial planning and premeditation" has a "common-sense core of meaning...that criminal juries should be capable of understanding." <u>See United States v. Mitchell</u>, 502 F.3d 931, 978 (9th Cir. 2007) (holding "substantial" not overbroad or vague); <u>United States v. Tipton</u>, 90 F.3d 861, 896 (4th Cir. 1996) (noting that context and clarifying jury instruction may

supply the "common sense core of meaning"); <u>United States v. McCullah</u>, 76 F.3d 1087, 1110(10th Cir. 1996). To the extent of any confusion, the Court can supply the jury with a definition.

### ii.  The Government Has Not Improperly Alleged Duplicative Statutory Aggravating Factors

#### a.  Grave Risk of Death to Others and Multiple Killings or Attempted Killings in a Single Episode are Not Duplicative

Defendant's motion to strike the grave risk of death and multiple attempted killings factors is **DENIED**. The grave risk of death and multiple attempted killings factors are not duplicative.  The applicable standard for whether two aggravating factors overlap "is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance 'necessarily subsumes' the other." <u>Cooks v. Ward</u>, 165 F.3d 1283, 1289 (10th Cir. 1998).  The Government has stated that it intends to limit application of the grave risk factor to bystanders such as bank customers and employees in the zone of Defendants' indiscriminate firing, and to limit application of the multiple attempted killings to the armored truck guards, who were the intended targets of the shooting.  Because different facts underlie each factor, they cannot be duplicative or subsume one another.

### b.   The Pecuniary Consideration Factor and the Charged Offense are Not Duplicative

Defendant's request to strike the pecuniary consideration statutory aggravating factor is **DENIED IN PART AND GRANTED IN PART**.  The pecuniary consideration statutory aggravating factor, § 3592(c)(8), is not duplicative of the charged offense of armed robbery. § 3592(c)(8) differs from the charged offense because it relates to the pecuniary consideration flowing from the murder, not the actual robbery.  United States v. Mitchell, 502 F.3d 931, 975 (9th Cir. 2007).  The Ninth Circuit has found that the pecuniary gain aggravating factor is satisfied "in the robbery scenario if the defendant committed a concomitant murder in the expectation of the receipt of anything of pecuniary value."  Mitchell, 502 F.3d at 975 (quoting United States v. Brown, 441 F.3d 1330, 1370 (11th Cir. 2006)). It is alleged that Defendant shot and killed Evelio Suarez for pecuniary gain.  The Government asserts that Suarez stood between Defendant and the money, so Defendant killed Suarez in order to steal it.  See Mitchell, 502 F.3d at 975 (pecuniary gain factor satisfied where defendants killed victims in carjacking to use car for a get-away vehicle in a planned robbery); LaGrand v. Stewart, 133 F.3d 1253, 1260 (9th Cir. 1998) (stabbing victim who would not open safe was in furtherance of pecuniary gain and satisfied the pecuniary gain aggravating factor); Brown, 441 F.3d at

8

1370 (pecuniary gain factor satisfied where jury could have found that defendant stabbed and killed victim in order to obtain money in a robbery).

In this case, the pecuniary aggravating factor is not duplicative of the charged offense so long as the Government makes clear that the pecuniary gain "flowed from the death" of Suarez. <u>United States v. Chanthadara</u>, 230 F.3d at 1263 (10th Cir. 2000). Therefore, the Government must amend its Notice to specify that the aggravating factor applies to the murder of Suarez because the pecuniary gain "flowed from the death" of Suarez.

### B.  The Alleged Non-Statutory Factors Need Not be Stricken

Defendant's motion to strike the non-statutory aggravating factors is **DENIED**.

#### i.  The Non-Statutory Aggravating Factors Constitutionally Limit and Guide the Discretion of the Jury

Defendant's Motion to Strike the Non-Statutory Aggravating Factors, based on the argument that they do not limit and guide the discretion of the jury, is **DENIED.** Non-statutory aggravating factors need not narrow the class of defendants eligible for the death penalty. <u>United States v. Higgs</u>, 353 F.3d 281, 320 (4th Cir. 2003).  The narrowing of the class occurs when the

1  jury determines that the defendant is eligible for the
2  death penalty because it has found one of the necessary
3  intent factors and one of the statutory aggravating
4  factors beyond a reasonable doubt in the eligibility
5  phase of sentencing.  <u>Id.</u>  The purpose of non-statutory
6  aggravating factors is for an individualized
7  determination of all relevant evidence once the jury has
8  determined that the defendant is eligible for the death
9  penalty.  <u>Zant v. Stephens</u>, 462 U.S. 862, 878-79 (1983).

11  <u>ii.  Congress' Delegation to the Government to
    Define Aggravating Factors Does Not Violate the
    Separation of Powers Principle or the
    Non-Delegation Doctrine</u>

14      Defendant's request to strike all non-statutory
15  aggravating factors based on the separation of powers
16  principle and the non-delegation doctrine is **DENIED.**
17  Congress' delegation to the Government to define
18  aggravating factors does not violate the separation of
19  powers principle or the non-delegation doctrine because
20  there is an intelligible principle to which the
21  Government is directed to conform.  <u>United States v.
22  Mitchell</u>, 502 F.3d 931, 979 (9th Cir. 2007).

24  <u>iii.  Permitting the Department of Justice to
    Define Non-Statutory Aggravating Circumstances
    After the Crime But Before Trial Does Not
    Violate the Ban on Ex Post Facto Laws</u>

27      Defendant's Motion to Strike the Non-Statutory
28  Aggravating Factors based on the ban on ex post facto

laws is **DENIED**.   Permitting the Department of Justice to define non-statutory aggravating circumstances after the crime but before the trial does not violate the constitutional ban on ex post facto laws.   Non-statutory aggravating circumstances are not elements of the crime, but rather sentencing considerations that do not retroactively increase the punishment for the crime. United States v. Allen, 247 F.3d 741,759 (8th Cir. 2001).   By the time the jury considers the non-statutory aggravating factors, the defendant is already eligible for the death penalty.

> iv.  The Federal Death Penalty Act Does Not Contain Any Statutory Inconsistencies That Would Preclude the Use of Non-Statutory Aggravating Factors

The Federal Death Penalty Act ("FDPA") does not contain any statutory inconsistencies that would preclude the use of non-statutory aggravating factors. The plain language of the statute clearly allows for the Government to present non-statutory aggravating factors in addition to the listed statutory aggravating factors. Therefore, Defendant's Motion to Strike the Non-Statutory Factors based on FDPA "inconsistencies" is **DENIED**.

///

///

///

///

11

<u>v.   The Court Should Not Grant a Hearing to
Consider Whether the Government has, Throughout
the Nation, Alleged Non-Statutory Factors
Consistently and Whether the Factors Alleged in
this Case Are Consistent with the Government's
General Practice</u>

Defendant's request for a hearing to show that the
federal government has inconsistently alleged
non-statutory aggravating factors thereby rendering the
statutory scheme unconstitutionally arbitrary is **DENIED**.
Such a hearing would be irrelevant because the purpose
of the non-statutory factors is to tailor them to the
specific crime.  Therefore, the factors the Government
presented in other cases are irrelevant because each
case is unique.  Any arbitrary use of the non-statutory
factors can be addressed by Defendant's right to
challenge the non-statutory aggravating factors with
this Court.

<u>vi.   The Future Dangerousness Factor Should Not
be Dismissed</u>

<u>a.   Congress Did Not Intend to Prohibit the
Separate Consideration of "Future
Dangerousness"</u>

Defendant's request to strike the future
dangerousness factor is **DENIED**.  § 3592 specifically
allows for the government to present non-statutory
aggravating factors.  Therefore, the fact that Congress
omitted "future dangerousness" from the list of
statutory aggravating factors is irrelevant.

Furthermore, the Supreme Court in <u>Simmons v. South
Carolina</u>, 512 U.S. 154, 163 (1994), approved the use of
future dangerousness under a capital sentencing statute
even when it was unenumerated in the statute.

**b.  <u>Limiting Future Dangerousness Should Be
Limited to Danger While Incarcerated</u>**

Defendant argues that if this Court allows the
future dangerousness non-statutory factor then it should
be limited to evidence that Defendant poses a danger to
the life of others while serving a life sentence without
release.

It is not relevant for the Government to argue that
Defendant poses a risk to society if Defendant will
never be released into society.  If this Court
determines, after the guilt phase, that it is highly
improbable that Defendant will receive a sentence of
less than life in prison, then the Government shall not
be allowed to "hammer away on the theme that defendant
could some day get out of prison."  Instead, in such a
case the Government will only be allowed to mention the
remote possibility of Defendant being released, and
instead be limited to primarily arguing Defendant's risk
of dangerousness to the prison population.  <u>United
States v. Flores</u>, 63 F.3d 1342 (5th Cir. 1995).

However, the Government has argued that Defendant

could receive a sentence of less than death.   Therefore,
Defendant's Motion is **DENIED WITHOUT PREJUDICE** at this
time.


### c.   The Future Dangerousness Factor is Not Meaningless

The non-statutory aggravating factor of future
dangerousness is not meaningless merely because it is
frequently asserted in capital cases.   It narrows the
class of death penalty eligible defendants because it is
not always asserted.   Furthermore, the non-statutory
aggravating factors do not play the same role in
narrowing the class of death penalty eligible defendants
as the statutory factors.   Instead, they are used to
further individualize the sentence.   Therefore,
Defendant's motion to strike the future dangerousness
factor on these grounds is **DENIED.**


### d.   The Future Dangerousness Factor Does Not Lessen the Government's Burden of Proof

Defendant's motion to strike the future
dangerousness factor on the basis that it lessens the
Government's burden of proof is **DENIED.**   The use of the
word "likely" does not lessen the Government's burden to
prove the future dangerousness factor beyond a
reasonable doubt.   It is not illogical to say that the
jury must find that Defendant is likely to commit future
criminal acts beyond a reasonable doubt.   The Supreme

14

1  Court has even stated that "future dangerousness" is an
2  appropriate aggravating factor and that it is used to
3  determine "likely" future behavior.  See Franklin v.
4  Lynaugh, 487 U.S. 164, 177-78 (1988).  Furthermore, the
5  Court can instruct the jury that they must find this
6  factor beyond a reasonable doubt.

7

8       **e.  The Jury is Capable of Making a Finding
9            on the Likelihood of Future Dangerousness**

10      Defendant's motion to strike the future
11  dangerousness factor on the basis that a jury is
12  incapable of making an accurate finding on Defendant's
13  future dangerousness is **DENIED**.  The Supreme Court
14  specifically stated in United States v. Jurek, 428 U.S.
15  262, 274-76 (1976), that prediction of future criminal
16  conduct is possible and is an essential element to the
17  criminal justice system.

18

19       **f.  The Future Dangerousness Factor Does
20            Not Duplicate the Charged Offense**

21      Defendant's motion to strike the future
22  dangerousness factor to the extent that this factor is
23  based on the crimes charged in this case because it is
24  duplicative is **DENIED**.

25

26      The applicable test for whether two aggravating
27  factors overlap "is not whether certain evidence is
28  relevant to both aggravators, but rather, whether one

aggravating circumstance 'necessarily subsumes' the other."  Cooks v. Ward, 165 F.3d 1283, 1289 (10th Cir. 1998).  This aggravating factor may have overlapping facts with the charged crimes, but it is not subsumed by them.  The future dangerousness factor asks the jury to look at the potential for future violence, not just the existence of the charged crime as an aggravating factor.

> g.  Lack of Remorse is Properly Alleged as Evidence of Defendant's Future Dangerousness

Defendant's motion to strike the future dangerousness factor on the basis that it violates his Fifth Amendment right to remain silent and his Sixth Amendment right to trial because it punishes him more severely for exercising his rights is **DENIED**. Furthermore, Defendant's motion that this factor violates his Eighth Amendment rights because it is inherently unreliable is **DENIED**.  The Supreme Court has upheld the use of lack of remorse as an aggravating factor.  Zant v. Stephens, 462 U.S. 862, 885 (1983). It is unquestionably proper for a judge or jury to take confessions, guilty pleas, and vows to improve one's life into account when deciding whether to impose death. United States v. Mikos, __ F.3d __,  2008 WL 3892144, at *11-12 (7th Cir. Aug. 25, 2008).  However, in order to safeguard Defendant's right to remain silent, this Court will not allow the Government to present evidence of

Defendant's silence as its only evidence to show lack of remorse.  The Government must show some affirmative acts to prove this factor.

### vii.  Victim Impact Evidence from Friends and Co-Workers is Admissible

Defendant's motion to exclude all victim impact evidence from non-family members is **DENIED**.  The Supreme Court has specifically held that victim impact evidence is admissible.  <u>Payne v. Tennessee</u>, 501 U.S. 808, 825 (1991).  The Supreme Court has not limited victim impact evidence to family members.  <u>Payne</u> stresses the importance of allowing the Government to present evidence so that the victim is not a faceless stranger. Therefore it is irrelevant whether this evidence comes from friends or family members.  Furthermore, the plain language of 18 U.S.C. § 3593 does not restrict victim impact evidence to family members because it allows presentation of "any other relevant information."

### C.  Evidence of Defendant's Unadjudicated Criminal Acts is Admissible

### i.  Congress Has Not Precluded the Government From Presenting Evidence of a Defendant's Prior Criminal Activity

Defendant's motion to exclude evidence of unadjudicated criminal conduct is **DENIED**.  18 U.S.C. § 3592(c) lists specific criminal convictions that can be

used as aggravating factors.  However, it also
specifically authorizes the jury to consider "whether
any other aggravating factor for which notice has been
given exists."  Therefore, under the plain reading of
the statute, Congress has not limited the use of
aggravating factors to the enumerated convictions.  <u>See</u>
<u>United States v. Higgs</u>, 353 F.3d 281, 323 (4th Cir.
2003); <u>United States v. Mills</u>, 446 F. Supp. 2d 1115,
1139-40 (C.D. Cal. 2006).

<u>ii.  Introduction of Evidence of Unadjudicated<br>Criminal Activity in a Capital Sentencing<br>Proceeding Does Not Violate the Fifth,<br>Sixth,and Eighth Amendments</u>

Evidence of unadjudicated criminal conduct in a
capital proceeding does not violate the Fifth, Sixth, or
Eighth Amendments.  Accordingly, Defendant's motion to
exclude such conduct is **DENIED.**

The Ninth Circuit has found that unadjudicated
criminal conduct is proper for consideration in a
capital sentencing phase.  <u>Coleman v. Risley</u>, 839 F.2d
434, 459 (9th Cir. 1988), <u>rev'd on other grounds sub</u>
<u>nom.</u> <u>Coleman v. McCormick</u>, 874 F.2d 1280 (9th Cir. 1989)
(en banc).  <u>See</u> <u>also</u> <u>Hatch v. State</u>, 58 F.3d 1447, 1465
(10th Cir. 1995) (upholding use of prior unadjudicated
conduct against due process challenge); <u>Devier v. Zant</u>,
3 F.3d 1445, 1464-65 (11th Cir. 1993) (finding it
"acceptable to consider evidence" of uncharged criminal

18

conduct); <u>Williams v. Lynaugh</u>, 814 F.2d 205, 208 (5th Cir. 1987) ("The admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments.").

Furthermore, the purpose of the "selection phase" of the sentencing hearing is for an individualized determination of all relevant evidence once the jury has determined that the defendant is eligible for the death penalty. <u>See Tuilaepa</u>, 512 U.S. 967, 972 (1994). This includes determining a defendant's likelihood of future dangerousness. <u>See Jurek v. Texas</u>, 428 U.S. 262, 275 (1976).

<u>iii.  The Probative Value of Evidence of Defendant's Unadjudicated Criminal Conduct is Not Outweighed by the Danger of Unfair Prejudice or Confusing the Jury</u>

Defendant requests that this Court exclude evidence of unadjudicated crimes because "its probative value is outweighed by the danger of unfair prejudice, confusing the issues or misleading the jury." Defendant's request is **DENIED WITHOUT PREJUDICE**. The purpose of sentencing is to make an individualized determination of whether Defendant should be sentenced to death. Relevant to this determination is Defendant's future dangerousness. Thus, Defendant's prior criminal acts are highly probative of this factor.

///

It is possible that evidence of unadjudicated criminal conduct may indeed still be prejudicial, but the Court does not find prejudice per se.  Instead, if necessary, the Court can entertain a motion or objection to specific evidence at a later time.

> iv.  Whether Evidence of Other Unadjudicated Criminal Acts Should be Excluded from the Guilt Phase is Not Ripe for Review

Defendant argues that evidence of unadjudicated criminal acts should be excluded from the guilt phase under Federal Rule of Evidence 403.  However, the Government has stated that at this time they do not intend to present such evidence during the guilt phase. Therefore, this Motion is **DENIED** because it is not ripe for determination.  If the Government decides to present such evidence during the guilt phase, it shall provide sufficient time and notice to Defendant such that the Court can consider whether it should be admitted.

> D.  The Government Does Not Need to Give a Detailed Proffer of Aggravating Factors and the Facts and Evidence Supporting Them

Defendant argues that the Notice should be dismissed, but if it is not, the Court should require the Government to give a detailed proffer of the aggravating factors and the facts and evidence supporting them.  For the same reasons articulated above under Defendant Williams' Motion to Strike the Notice of Intent to Seek the Death Penalty, Defendant's motion is

**DENIED**.

4.   Defendant Johnson's Motion to Strike the Non
     Statutory Aggravating Factors from the Notice of
     Intent to Seek the Death Penalty [520]

     Defendant's Motion is **DENIED IN PART AND GRANTED IN
PART**, for the same reasons explained under Defendant
Williams' Motion to Strike Notice of Intent to Seek the
Death Penalty and to Dismiss "Special Findings" [514].

5.   Defendant Williams' Motion to Preclude a Capital
     Prosecution Under 18 U.S.C. §§ 924(c) and (j) [517]

     Defendant's Motion is **DENIED**.  The Second Amendment
right to bear arms, as decided by the recent Supreme
Court case Heller v. United States, does not make 18
U.S.C. §§ 924(c),(j), unconstitutional because §§ 924(c)
and (j) constitute reasonable limitations on Defendant's
Second Amendment rights.

     Furthermore, Cuff v. United States, cited by the
Defendant, is inapplicable to the instant case because
Defendant is charged with using a firearm in connection
with a crime of violence, and not use of a firearm in
connection to homicide.  In addition, the use of a
firearm in the instant case is alleged to charge the
substantive non-capital offense under § 924(c), which is
then made capital by the FDPA intent and statutory
aggravating factors, which do not include the use of a

1  firearm.

2

3  6.   <u>Defendant Williams' Motion to Strike the Notice of</u>
       <u>Intent to Seek the Death Penalty and Motion to</u>
4      <u>Declare the Federal Death Penalty Act</u>
       <u>Unconstitutional, and to Dismiss "Special Findings"</u>
5      <u>from the Indictment [524]</u>

6
       This Court **DENIES** Defendant's Motion.
7

8      <u>A.   The Federal Death Penalty Act ("FDPA") is Not</u>
       <u>Unconstitutional</u>
9

10     The determination that aggravating circumstances

11 outweigh mitigating circumstances is not a "fact" and,

12 thus, need not be found beyond a reasonable doubt

13 pursuant to the decisions in <u>Arizona v. Ring</u>, 536 U.S.

14 584 (2002), <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 482-84

15 (2000); <u>Jones v. U.S.</u>, 526 U.S. 227 (1999); <u>Booker v.</u>

16 <u>United States</u>, 543 U.S. 220 (2005); and <u>Blakely v.</u>

17 <u>Washington</u>, 542 U.S. 296 (2004), all cited by

18 Defendants.

19

20     The Courts in <u>Ring</u>, <u>Apprendi</u>, and <u>Jones</u> determined

21 that, when a certain finding of fact has the impact of

22 increasing the defendant's sentence, that fact must be

23 found by a jury beyond a reasonable doubt.  <u>Arizona v.</u>

24 <u>Ring</u>, 536 U.S. 584, 609 (2002).  <u>See</u> <u>Apprendi v. New</u>

25 <u>Jersey</u>, 530 U.S. 466, 482-84 (2000); <u>Jones v. U.S.</u>, 526

26 U.S. 227, 251-52 (1999).  Similarly, the Courts in

27 <u>Booker</u> and <u>Blakely</u> found that a jury must find the

28 existence of any fact that is "essential" to a

                                22

defendant's punishment.  <u>Booker v. United States</u>, 543
U.S. 220, 232 (2005) (citing <u>Blakely v. Washington</u>, 542
U.S. 296, 301 (2004)).


     However, the "weighing" stage in the FDPA does not
require a finding of fact that increases the defendant's
sentence above that for which the defendant is already
eligible.  <u>See</u> <u>e.g.</u>, <u>United States v. Purkey</u>, 428 F.3d
738, 750 (8th Cir. 2006) ("[I]t makes no sense to speak
of the weighing process mandated by [the FDPA] as an
elemental fact for which a grand jury must find probable
cause" because "[i]n the words of the statute, it is a
'consideration[.]'"); <u>United States v. Diaz</u>, 2007 U.S.
Dist. LEXIS 18442, at *13 (N.D.Cal 2007); <u>United States
v. Henderson</u>, 461 F. Supp. 2d 133, 134-35 (S.D.N.Y.
2006).


     Defendants also cite to <u>Cunningham v. California</u>,
127 S.Ct. 856 (2007), for the proposition that the
Supreme Court mandates that a "weighing phase" to
determine a defendant's sentence must be found by a jury
beyond a reasonable doubt.  However, <u>Cunningham</u> does not
stand for this proposition.  Rather, in <u>Cunningham</u>, the
Court held that aggravating factors could not be found
by a judge by a preponderance of the evidence, but
instead must be found by a jury beyond a reasonable
doubt.  <u>Id.</u> at 871.  The FDPA clearly mandates that a
jury find aggravating factors beyond a reasonable doubt.

Thus, there is no conflict with <u>Cunningham</u> in this case.

### B.  The "Special Findings" Are Not Dismissed

#### i. A Grand Jury Need Not Be Informed of the Consequences of its "Special Findings"

A grand jury need not have notice that its findings may result in a death sentence.  <u>See</u> <u>e.g.</u> <u>United States v. Williams</u>, 2007 U.S. Dist. LEXIS 73775, at *11 (D. Haw. 2007); <u>United States v. Haynes</u>, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) ("The grand jury's role is not to decide whether probable cause supports the imposition of a particular *sentence* against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent *factual* determination of the existence of probable cause for the essential elements of the charged offense."); <u>Purkey</u>, 428 F.3d at 748-49.

Further, the Ninth Circuit has upheld the constitutionality of the grand jury instruction providing that the jury "should not be concerned about punishment in the event of a conviction."  <u>Williams</u>, 2007 U.S. Dist. LEXIS 73775, at *12 (citing <u>United States v. Cortez-Rivera</u>, 454 F.3d 1038, 1041 (9th Cir. 2006)).

///

///

<u>ii. Non-Statutory Aggravating Factors Need Not
Be Included in the Indictment</u>

Non-statutory aggravating factors do not serve to
increase the penalty for which a defendant may be
sentenced and, thus, are not required in the
indictment.[1]  In contrast to statutory aggravating
factors, non-statutory aggravating factors cannot, by
themselves, increase the punishment to a death sentence.
Further, non-statutory aggravating factors are only
considered after the defendant is already death
eligible.  <u>See</u> <u>e.g.</u> <u>United States v. Mitchell</u>, 502 F.3d
931, 979 (9th Cir. 2007); <u>United States v. Bourgeois</u>,
423 F.3d 501 (5th Cir. 2005).


<u>B.  The Notice of Intent to Seek the Death Penalty
Is Not Stricken</u>

<u>i. The Federal Rules of Evidence Do Not and
Need Not Apply in the Penalty Phase</u>

The "relaxed" evidentiary standard in the FDPA does
not render the statute unconstitutional because (1) the
Fifth and Sixth Amendments do not require compliance
with the Federal Rules of Evidence in the penalty phase

---

[1] Defendants make the argument that, because the Central
District in <u>United States v. Mills,</u> 446 F. Supp. 2d 1115, 1120
(C.D. Cal. 2006), determined that the jury's determination of the
existence of non-statutory aggravating factors rises to the level
of "fact finding" for purposes of the Confrontation Clause, non-
statutory aggravating factors must be included in the indictment.
However, the court in <u>Mills</u> did not make that logical leap and,
more importantly, the Ninth Circuit has rejected the contention
that non-statutory factors must be charged in an indictment.
<u>United States v. Mitchell</u>, 502 F.3d 931, 979 (9th Cir. 2007).

and (2) "the FDPA's evidentiary standard is broad enough, and gives trial courts sufficient flexibility, to ensure that unconstitutional evidence of the *mens rea* and aggravating factors is not admitted." <u>United States v. Haynes</u>, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003).

<u>a. The Constitution does not Require Compliance with the Federal Rules of Evidence</u>

The Federal Rules of Evidence are not mandated by the Constitution and "Congress has power to prescribe what evidence is to be received in the courts of the United States." <u>United States v. Lentz</u>, 225 F.Supp. 2d 672, 682 (E.D. Va. 2002) (quoting <u>Tot v. United States</u>, 319 U.S. 463, 467 (1943)) (internal citations omitted). The purpose of the Fifth Amendment is to protect a defendant's right to a fair trial.  <u>See</u> <u>United States v. Matthews</u>, 246 F. Supp. 2d 137, 143 (N.D.N.Y. 2002).  To that end, more rather than less evidence at the penalty phase ensures fairness.  <u>See</u> <u>Mitchell</u>, 502 F.3d at 979-80; <u>United States v. Lee</u>, 374 F.3d 637, 648 (8th Cir. 2004) ("[T]he admission of more rather than less evidence during the penalty phase increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense.").

///

///

26

### b. The FDPA Provides Safeguards to Ensure Unconstitutional Evidence is not Introduced

Under the FDPA, a court has broader discretion to rule evidence inadmissible than under the Federal Rules of Evidence. Lentz, 225 F. Supp. 2d at 683 (quoting United States v. Jones, 132 F.3d 232, 241 n.7 (5th Cir. 1998), aff'd sub nom. Jones v. United States, 527 U.S. 373 (1999)) ("The relevancy standard enunciated in [the FDPA] actually excludes a greater amount of prejudicial information than the Federal Rules of Evidence because it permits the judge to exclude information where the 'probative value is outweighed by the danger of creating unfair prejudice' rather than 'substantially outweighed.'"). "[B]ecause the Federal Rules of Evidence offer broader protection than that which is required by the Constitution[,]" the "relaxed evidentiary standard" does not violate Defendants' Fifth Amendment rights. Haynes, 269 F. Supp. 2d at 986.

Defendant's reliance on Crawford v. Washington, 541 U.S. 36 (2004), is misplaced.[2] The holding in Crawford applies only to testimonial statements and their reliability. See United States v. Smith, 2008 U.S. Dist. LEXIS 60628 *14-15 (E.D. Va. 2008) (holding that, at most, Crawford may necessitate deeming "testimonial

---

[2] The Court in Crawford held that the reliability of an out-of-court statement must be tested in court, on the witness stand, unless the witness is unavailable and the defense had a prior opportunity to cross-examine. Crawford, 541 U.S. at 68.

out-of-court statements" inadmissible at the penalty
stages); <u>United States v. Green</u>, 2008 U.S. Dist. LEXIS
65387 *27-29 (W.D. Ky. 2008) (noting that "Defendant's
specific argument [regarding the "relaxed evidentiary
standard"] has been rejected by the Second, Fourth,
Fifth, Eighth, Ninth, and Tenth Circuit Courts of
Appeals."). Courts since <u>Crawford</u> have held that the
evidentiary standard in the FDPA does not violate a
defendant's constitutional rights. <u>See e.g.</u> <u>Mitchell</u>,
502 F.3d at 979-80.

<u>ii. Defendant is Not Entitled to a Presumption<br>of Innocence at the Penalty Phase</u>

Once a jury finds a defendant guilty of an
underlying murder charge, that defendant is no longer
entitled to a presumption of innocence in the penalty
phase. <u>United States v. Cheever</u>, 423 F. Supp. 2d 1181,
1195-96 (D. Kan. 2006). "[T]he absence of an explicit
provision regarding the presumption of innocence [in the
sentencing phase] does not render the FDPA
unconstitutional." <u>Williams</u>, 2007 U.S. Dist. LEXIS
73775, at *15-16.

7.   <u>Defendant Johnson's Motion to Strike Notice of
     Intent to Seek the Death Penalty, to Dismiss
     "Special Findings" from the Indictment and to
     Declare the Federal Death Penalty Act
     Unconstitutional [519]</u>

Defendant's Motion is **DENIED**, for the same reasons

explained under Defendant Williams' Motion to Strike the
Notice of Intent to Seek the Death Penalty and Motion to
Declare the Federal Death Penalty Act Unconstitutional,
and to Dismiss "Special Findings" from the Indictment
[524].

8.   Defendant Williams' Motion for Four Phase Trial
     [525]

     Defendant's Motion is **DENIED WITHOUT PREJUDICE.**
Defendant's trial will only have a single guilt phase
and a single penalty phase.

     18 U.S.C. § 3593 bifurcates the guilt and penalty
phases.  Additionally, under this statute, the jury
determines all the aggravating and mitigating factors
during a single penalty phase.  18 U.S.C. § 3593(c)
(2002).

     No court has ever held that bifurcation of the
penalty phase is mandatory.  In fact numerous cases
illustrate that courts continue to follow the procedure
set forth under the statute, and only bifurcate the
guilt and penalty phases.  See also United States v.
Waldon, 363 F.3d 1103, 1110-11 (11th Cir. 2004)
(bifurcating guilt and penalty phases according to the
FDPA); United States v. Purkey, 428 F.3d 738, 749 (8th
Cir. 2005) (noting that after the guilt phase the jury
must make all three determinations in the penalty

phase); <u>United States v. Webster</u>, 162 F.3d 308, 320 (5th Cir. 1998).  <u>Cf.</u> <u>Booth-El v. Nuth</u>, 288 F.3d 571, 582 (4th Cir. 2002) (for state murder charge, Court found that there was no error in refusing to bifurcate penalty phase and allowing jury to consider the gateway factor making the defendant death eligible along with aggravating and mitigating factors).

Based on the above, the decision whether to bifurcate or trifurcate the penalty phase is within the discretion of the Court.  Defendant has not presented a compelling reason to require such action at this time. Any potential for the non-statutory factors to improperly influence the jury in determining whether Defendant is death eligible can be cured with a limiting instruction to the jury.

Lastly, contrary to Defendant's assertion, the Constitution and the Supreme Court's rulings in the <u>Apprendi</u> line of cases do not require that the gateway *mens rea* and statutory aggravating factors be established in a trial before the death penalty can be imposed.[3]  <u>United States v. Johnson</u>, 362 F. Supp. 2d 1043, 1103 (N.D. Iowa 2005).  Instead, these cases stand for the proposition that "any aggravating factor,

---

[3] The <u>Apprendi</u> line of cases are: <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 482-84 (2000); <u>Arizona v. Ring</u>, 536 U.S. 584 (2002); <u>Jones v. U.S.</u>, 526 U.S. 227 (1999); <u>Booker v. United States</u>, 543 U.S. 220 (2005); and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004)).

without which the death penalty cannot be imposed, must
be charged in an indictment and proved to a jury beyond
a reasonable doubt." <u>Id.</u>   These aggravating factors can
be proved in a trial, sentencing hearing, or penalty
phase. <u>Id.</u>

9.   <u>Defendant Williams' Motion to Dismiss Case for
     Prosecutorial Misconduct [526]</u>

     Defendant's Motion is **DENIED WITHOUT PREJUDICE.**
Neither the charges against Defendant nor the
prosecution team should be dismissed.

     A.   <u>Legal Standard</u>

     "When the government deliberately interferes with
the confidential relationship between a criminal
defendant and defense counsel, that interference
violates the Sixth Amendment right to counsel if it
substantially prejudices the criminal defendant."
<u>Williams v. Woodford</u>, 384 F.3d 567, 584-585 (9th Cir.
2002).   Intrusion alone is not sufficient to find
substantial prejudice.   Rather, there is only
substantial prejudice "when evidence gained through the
interference is used against the defendant at trial,"
when the "prosecution[] use[s] [] confidential
information pertaining to the defense plans and
strategy", and when the prosecution takes "other actions
designed to give the prosecution an unfair advantage at
trial." <u>United States v. Irwin</u>, 612 F.2d 1182, 1187

31

(9th Cir. 1980).  Where the government has obtained evidence through interference with the right to counsel, the defendant has the burden to show substantial prejudice.  <u>United States v. Danielson</u>, 325 F.3d 1054, 1070 (9th Cir. 2003).

     If there is substantial prejudice, then the Court must "neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." <u>United States v. Morrison</u>, 449 U.S. 361, 365 (1981). Unless there is no other way to remedy the substantial prejudice, "dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate."  <u>Id.</u>  In most cases, any prejudice or potential prejudice can be avoided by suppressing any improperly obtained evidence.

     B.  Analysis

     Defendant has not given any facts to carry his burden in showing he was substantially prejudiced by the Government's alleged intrusion into his confidential attorney-client relationship.  The Government has submitted affidavits from the prosecution team stating that none of the Assistant United States Attorneys ("AUSA's") on the case have listened to any of the recordings.  Although two of the prosecution's

32

investigators have listened to several calls, the
investigators have submitted affidavits attesting to the
fact that, for all but two of the conversations, they
only listened until they heard Defendant's attorney
identify herself.  Furthermore, for the two
conversations that Special Agent Cota listened to beyond
defense counsel's identification, he stated that he did
not listen to any substance of the call.  Rather, he
only continued listening because, in one call, Defendant
asked his attorney to place a three way call (to a non-
attorney), and, in the other, began making threats to
harm co-Defendant Johnson's counsel.  In both calls,
Cota ceased listening upon Defendant's counsel's refusal
to place the three-way call, and counsel's mollifying
Defendant in regards to the threats.  Both investigators
have sworn they have not heard anything of substance.

     More importantly, Defendant has not presented any
evidence, or made any argument, that the prosecution
obtained specific evidence to use against Defendant at
trial or gained any defense plans or strategy.  Instead,
Defendant assumes that the mere fact that the Government
monitored his calls while he was speaking with his
attorney is sufficient to show prejudice.  This is
simply not the case.  Additionally, the Government has
already stated that none of the prosecutors have
reviewed the tapes, transcripts, or summaries of the
tapes.  If Defendant believes that the Government has

obtained an unfair advantage from listening to these
conversations, then he must make more specific claims.

Lastly, Defendant argues that his relocation to San
Bernardino County Jail against the Court's order was
outrageous conduct that warrants sanctions against the
prosecution and dismissal of this case.  While it is
true that the Court ordered that Defendant remain at
MDC-LA, it appears that he was moved after initiating a
fight.  There is no evidence or argument that
Defendant's relocation or monitoring of his attorney
phone calls was at the request of the prosecution.
Therefore, sanctioning the prosecutors or dismissal of
this case is not warranted.

10. <u>Defendant Johnson's Motion for Discovery</u>

Defendant Johnson's Motion is **DENIED IN PART AND
GRANTED IN PART.**

As to Defendant's itemized request #1, the still
photographs, this Court finds that based on the
Government's offer to produce the still photographs and
continue to produce should the Government prepare any
other still photographs from the videos, Defendant's
motion is **DENIED** as **MOOT.**

As to Defendant's itemized request #2, tape

recording #357726 dated 07/22/05, to the extent the
Government has agreed to produce the recording at least
45 days before trial, Defendant's motion is **DENIED.**

As to Defendant's itemized request #3, all phone
and direct connect records, to the extent the Government
is in possession of such records and has not yet
produced them to Defendant, Defendant's motion is
**GRANTED.**

As to Defendant's itemized request #4, the large
map with evidence plotted on it, based on the
Government's claim that it has already produced the item
and assurance that it will provide a copy of the map if
it produces a different or larger map for trial
purposes, Defendant's motion is **DENIED** as **MOOT.**

As to Defendant's itemized request #5, to the
extent that the Government is in possession of the DNA
data relating to the two previous crimes involving
Defendant on April 23, 2004 and May 14, 2004,
Defendant's motion is **GRANTED.**

As to Defendant's itemized request #6, fibers and
other DNA material obtained from the rastafarian hat, to
the extent that the Government is in possession of
relevant documents related to the examination of hair
and fiber removed from the rastafarian hat, Defendant's

motion is **GRANTED**.

11. <u>Defendant Williams' Motion for Joinder as to
    Defendant Johnson's Motion for Discovery [527]</u>

     To the extent applicable, the Court **GRANTS**
Defendant Williams' Motion to join in Defendant
Johnson's Motion for Discovery.

12. <u>Defendant Williams' Motion for a Separate Trial
    from Co-Defendant Johnson [516]</u>

     "There is a preference in the federal system for
joint trials of defendants who are indicted together.
Joint trials 'play a vital role in the criminal justice
system.'  They promote efficiency and 'serve the
interests of justice by avoiding the scandal and
inequity of inconsistent verdicts.'" <u>Zafiro v. United
States</u>, 506 U.S. 534, 537 (1993) (quoting <u>Richardson v.
Marsh</u>, 481 U.S. 200, 209-10 (1987).

     Nevertheless, even when defendants are properly
joined in an indictment, the Federal Rules of Criminal
Procedure authorize severance in appropriate cases.
Rule 14 provides, in pertinent part:

          If the joinder of ... defendants in an indictment
          ... appears to prejudice a defendant or the
          government, the court may ... sever the defendants'
          trials, or provide any other relief that justice
          requires.

Fed. R. Crim. P. 14.  However, a limiting instruction

1 will usually cure any prejudice.  <u>Zafiro</u>, 506 U.S. at

2 539.  The Defendant has the burden to show prejudice.

3 <u>Id.</u>

4       Defendant has not met his burden to show prejudice,

5 and accordingly, his Motion is **DENIED.**

6

7       <u>A. Confrontation Clause Claims</u>

8

9             <u>i.  Witness 1's Statements</u>

                  <u>a.  Johnson's Objections to Witness 1's</u>
10                <u>Statements</u>

11

12       Witness 1's testimony that Williams told him that

13 Johnson took a money bag and disappeared, and that he

14 was going to kill Johnson if Johnson did not come

15 forward with the missing money bag, does not warrant

16 severance of the trial.  Witness 1's testimony is not

17 under Federal Rule of Evidence 801(d) because it is a

18 statement of a party opponent, and is an exception to

19 the hearsay rule under Federal Rule of Evidence

20 804(b)(3) as a statement against interest.  However, the

21 testimony must still satisfy <u>Crawford v. Washington</u>, 541

22 U.S. 36 (2004).

23

24       Introduction of co-conspirator statements made in

25 furtherance of a conspiracy does not violate the

26 Confrontation Clause.  <u>United States v. Allen</u>, 425 F.3d

27 1231 (9th Cir. 2005).  Moreover, under <u>United States v.</u>

28 <u>Atkins</u>, 307 F.2d 937, 940 (9th Cir. 1962), the

37

conspiracy was still continuing when these statements
were made because the fruits of the crime had not been
distributed.   However, the statements  were not made in
furtherance of the conspiracy.   "The Ninth Circuit has
strictly construed the 'in furtherance of the conspiracy
requirement.'"   United States v. Nazemian, 948 F.2d 522,
529 (9th Cir. 1991).   "To be 'in furtherance,' the
statements must further the common objectives of the
conspiracy."   Id.   In United States v. Foster, 711 F.2d
871, 880 (9th Cir. 1983), the Court found that
statements made by a co-conspirator to a third person
not involved in the conspiracy were not in furtherance
of the conspiracy because they did not intend to elicit
cooperation or assist in achieving the objective of the
conspiracy.

Here, the Government has not alleged that Witness 1
was involved in the conspiracy.   The statement at issue
does not appear to be in furtherance of the conspiracy
because it does not intend to induce Witness 1 to help
further the conspiracy.   Instead, the first portion of
the statement about Johnson stealing the money is a
narrative statement about past events.   As for the
portion of the statement about intending to kill
Johnson, it too was not in furtherance of the
conspiracy.   Therefore, Defendant Williams' statement to
Witness 1 is not a statement of a co-conspirator in
furtherance of a conspiracy.   As such, admitting it in

un-redacted form would violate Defendant Johnson's
confrontation rights under the Sixth Amendment and
<u>Bruton v. United States</u>, 391 U.S. 123, 134 (1968) (when
the prosecution introduces a statement of a co-defendant
that inculpates a defendant, and that co-defendant does
not take the stand, the inculpated defendant's right to
confrontation is violated).

     However, the protective rule of <u>Bruton</u> was limited
by <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).  In
<u>Richardson</u>, the Court held that the "Confrontation
Clause is not violated by the admission of a
nontestifying codefendant's confession with a proper
limiting instruction when, as here, the confession is
redacted to eliminate not only the defendant's name, but
any reference to his or her existence."  <u>Id</u>. at 211.

     Here, while the totality of the statements are
unknown to the Court, based on Johnson's arguments,
Williams specifically identified him when he said
Johnson had taken the money bag and he would kill him if
the bag was not returned.  Witness 1's initial statement
appears to fall under the <u>Richardson</u> exception.
Therefore, the statement is admissible, but where
Johnson is directly implicated, the Government must
redact the statement to eliminate all references to
Johnson in accordance with <u>Bruton</u>, <u>Marsh</u>, <u>Gray v.
Maryland</u>, 523 U.S. 185 (1998), and <u>United States v.</u>

39

Peterson, 140 F.3d 819 (9th Cir. 1998).

### b.   Williams' Objections to Witness 1's Statements

Witness 1's testimony that Johnson told him that he shot himself in the foot on the day of the robbery is admissible without redaction because it is a statement of a party opponent, and does not violate the Confrontation Clause.  As such, it does not violate Defendant Williams' right to confrontation because he can impeach Witness 1 about the truth of the statement.

### ii.   Witness 2's Statements

Witness 2's testimony about William's statements is admissible as a statement against interest under Federal Rule of Evidence 804(b)(3).  Furthermore, Rule 804(b)(3) "is not limited to confessions of criminal responsibility," but can include statements showing detailed knowledge of the crime.  United States v. Layton, 720 F.2d 548, 559-60 (9th Cir. 1983).  The fact that the statement was made to a friend or cellmate does not effect whether the statement was against the declarant's penal interest.  United States v. Lang, 589 F.2d 92, 97 (2nd Cir. 1978).

The statement that one of the robbers panicked and shot himself in the foot tends to subject Defendant

Williams to criminal liability because it tends to prove
that he has inside knowledge of the crime that very few
people would know, other than those involved.
Furthermore, Defendant made the statements to Witness 2
as a friend in a private, casual conversation with no
reason to believe they would be relayed to law
enforcement.   Therefore, because the statements are
statements against interest, they are non-testimonial
and there is no Confrontation Clause violation.  <u>See</u>
<u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006)
(Confrontation Clause does not apply to "non-
testimonial" out-of-court statements).[4]  <u>See</u> <u>also</u> <u>Davis</u>,
547 U.S. at 825 (citing <u>Bourjaily v. United States</u>, 438
U.S. 171, 181-84 (1987) for proposition that statements
made unwittingly to a Government informant are
nontestimonial); <u>Horton v. Allen</u>, 370 F.3d 75, 84 (1st
Cir. 2004) (statements made in private conversation
between private persons are not testimonial because a
reasonable person would not believe they would be used
at a later trial); <u>United States v. Nguyen</u>, 267 Fed.
Appx. 699, 705 (9th Cir. 2008) (explaining that
statements made in casual conversation "...are plainly
non-testimonial: They did not approach a solemn

---

[4] The Supreme Court has not specifically defined what
statements qualify as testimonial; however, it has offered
several examples of statements that qualify as testimonial.   As
a general rule, statements are considered testimonial if they are
made in "response to structured questioning in an investigative
environment or a courtroom setting where the declarant would
reasonably expect that his or her response might be used in
future judicial proceedings." <u>United States v. Saget</u>, 377 F.3d
223, 228 (2nd Cir. 2004).

declaration or affirmation made for the purpose of
establishing or proving some fact."). Therefore, the
Confrontation Clause is not violated because the
statements are non-testimonial, and admissible as
statements against interest.[5]

B. Impeachment Claims

Evidence that Witness 1 was involved in a murder is
relevant for impeachment because it goes to bias and
credibility. However, the fact that Witness 1 may
testify that he did not commit the murder, but rather
Defendant Williams did, is not relevant. Specifically
identifying Williams as the alleged murderer is
irrelevant to Witness 1's credibility or bias. It is
only relevant that Witness 1 did or did not commit the
murder. Additionally, Witness 1's testimony of

---

[5] The Government argues that Defendant Williams' statements
were against his penal interest because he should have known that
making the statements to Witness 1 would subject him to criminal
liability. Defendant argues that this undercuts the Government's
argument that the statement was non-testimonial under Crawford
because Defendant had no reason to believe his statements would
be used against him at trial. However, these two standards are
not mutually exclusive. The statement against interest is only
"A statement which was at the time of its making ... so far
tended to subject the declarant to civil or criminal liability...
that a reasonable person in the declarant's position would not
have made the statement unless believing it to be true." This
standard concerns itself with the reliability of the statement.
It assumes that a person would not make a statement that has
potential to subject him to criminal prosecution if it were not
true. On the other hand, Crawford is concerned with testimonial
statements gathered in an administrative setting. See also United
States v. Saget, 377 F.3d 223, 228 (2nd Cir. 2004) (finding that
statement was against defendant's penal interest and did not
violate Crawford).

Defendant Williams as the actual murderer is highly
prejudicial and should be excluded under Federal Rule of
Evidence 403.   Therefore, Defendant Williams' motion to
sever on these grounds is **DENIED**.


C.   Penalty Phase Claims


i.   The Eighth Amendment Right to
Individualized Sentencing

a. Blending Moral Culpability


The right to an individualized sentence is not
jeopardized in a joint penalty phase.   As the facts are
now alleged, differences in criminal history are not
likely to negate either Defendant's right to
individualized consideration.   Any potential prejudice
from disparate criminal records and activity can be
cured with an instruction from the Court reminding the
jury to consider each defendant individually.   Zafiro v.
United States, 506 U.S. 534, 539 (1993).


b.  Mutually Antagonistic Defenses/
§ 3592(a)(4)

If co-defendants present mutually antagonistic
defenses, a trial or penalty phase should be severed if
defendants will be prejudiced.   United States v.
Tootick, 952 F.2d 1078 (9th Cir. 1991).   There is no
bright-line rule requiring that a trial be severed

whenever defendants have mutually antagonistic defenses.
_Zafiro_, 506 U.S. at 539.  Even if prejudice is shown, a
court need not sever a trial when a jury instruction
will cure any resulting prejudice.  _Id._ at 538-39.
Severance is only mandated when "there is a serious risk
that a joint trial would compromise a specific trial
right of one of the defendants, or prevent the jury from
making a reliable judgment about guilt or innocence."
_Id._

     Defendants' defenses are not mutually antagonistic
and they have not shown any prejudice that cannot be
cured by a jury instruction.  A defense is not mutually
antagonistic merely because defendants blame each other
for the crime.  _United States v. Sherlock_, 962 F.2d
1349, 1363 (9th Cir. 1992).  "To be entitled to
severance on the basis of mutually antagonistic defenses
a defendant must show ... that the acceptance of the
codefendant's theory by the jury precludes acquittal of
the defendant."  _United States v. Throckmorton_, 87 F.3d
1069, 1072 (9th Cir. 1996).

     Additionally, under 18 U.S.C. § 3592, Congress
intended that neither the sentence nor the equal
culpability of a co-defendant should be treated as an
aggravating factor; but rather, as a mitigating factor,
it is only to incur to the benefit of the capital
defendant.  This means that finding one defendant less

44

blameworthy than the other does not give the jury the discretion to hold that finding as an aggravating factor against the more culpable defendant.   Therefore, it is incorrect to consider this as a mutually antagonistic defense because finding one defendant less blameworthy should not have an effect on the more culpable defendant.   The Court will instruct the jury about the purpose of § 3592(a)(4) as a mitigation factor only, not to give one defendant life and one defendant death.

### c. Dilution of Mitigation Evidence and Use of One Defendant's Mitigation Evidence as Aggravating Evidence Against the Other

A joint penalty phase will not dilute Defendants' mitigation evidence and violate their right to individualized sentencing.   Neither Defendant has presented evidence that the other's mitigation evidence is so overwhelming that it would cause incurable prejudice to him.   Additionally, any problem that this may cause to individualized consideration can be cured with a proper jury instruction.   See Zafiro v. United States, 506 U.S. 534, 539 (1993); see also United States v. Bernard, 299 F.3d 467, 476 (5th Cir. 2002) (Fifth Circuit upheld lower court's decision not to sever capital defendants' trial, even though one defendant offered mitigating evidence of his Christian conversion and other defendant lacked comparable mitigating evidence).

### d.  Alleged Negative Racial Stereotyping

Defendants' rights to individualized sentencing free from racial prejudice will be protected through a proper juror voir dire that screens jurors for any racial prejudice, and the FDPA admonition in 18 U.S.C. § 3593(f).[6]

### ii.  Conflict Between the Fifth Amendment Right Against Self-Incrimination and Eighth Amendment Mitigation Rights of Co-Defendants at a Joint Capital Trial

The Fifth Amendment right to remain silent applies during the penalty phase of a trial.  However, the Eighth Amendment allows for a defendant's waiver of his Fifth Amendment rights to be considered in mitigation of his punishment.  Estelle v. Smith, 451 U.S. 454, 462-63 (1981).

A joint capital trial does not create an impermissible conflict between these rights.  It is presumed that juries follow instructions, and the jury will be instructed that expressing remorse is a mitigating factor, but silence is not an aggravating

---

[6] Defendant's reliance on Turner v. Murray, 476 U.S. 28, 36 (1986), to support his argument that racial prejudice could influence a juror to favor the death penalty is misplaced. Turner held that potential racial prejudice in a trial where the victim was a different race from the defendant should be addressed in voir dire to guard the defendant's rights.  The Court never held that potential prejudice was a reason to sever a capital trial or sentencing phase.

factor.   It is not unreasonable to instruct the jury
that expressing remorse (which involves foregoing the
right to silence) is a mitigating factor, but silence is
not an aggravating factor.   Instead, the jury is asked
to find the middle ground-—to draw neither a negative or
positive inference from the silence.   Furthermore, the
jury will be instructed that each individual defendant
should receive individualized consideration, and is not
to be compared to the other.

### iii.   Due Process Right of Notice of Evidence to be Offered at Penalty Phase

Defendant Williams' right to due process and fair
notice of the evidence to be offered against him during
the penalty phase does not warrant severance for lack of
notice of evidence that co-defendant Johnson may offer
against him.

As previously explained, Defendant is not entitled
to pre-trial notice of all the evidence to be used
against him.   Additionally, Defendant Williams has not
provided any evidence that Defendant Johnson actually
intends to present evidence against him during the
penalty phase.   Furthermore, Williams' rights will not
be violated if he is given the opportunity to respond to
any evidence, and if necessary, to investigate it.   See
Creech v. Arave, 947 F.2d 873, 880-81 (9th Cir. 1991)
(rejecting the argument that defendant's rights were

violated under <u>Gardner v. Florida</u>, 430 U.S. 349, 362 (1977), because pre-sentence report was disclosed to defendant and he had the opportunity to challenge the information).

13. <u>Defendant Johnson's Supplemental Motion to Sever</u>
<u>Defendant Williams [529] and [408]</u>

Defendant Johnson's Motion is **DENIED**, for the same reasons explained under Defendant Williams' Motion for a Separate Trial from Co-Defendant Johnson.

**IT IS SO ORDERED.**

_____

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge

DATE: October 15, 2008

48